# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## GERMAINE L. THOMAS
## PRIVATE FIRST CLASS (E-2), U.S. MARINE CORPS

### NMCCA 201300357
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 18 May 2013.
**Military Judge:** LtCol Charles A. Miracle, USMCR.
**Convening Authority:** Commanding General, Training Command, Quantico, VA.
**Staff Judge Advocate's Recommendation:** LtCol M.E. Sayegh, USMC.
**For Appellant:** LT Jessica L. Ford, JAGC, USN.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; Maj David N. Roberts, USMC.

**26 November 2014**

---
### PUBLISHED OPINION OF THE COURT
---

MCFARLANE, Senior Judge:

A panel of members with officer and enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of rape and two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The members acquitted the appellant of burglary and a third specification of sexual assault. The members sentenced the appellant to three years' confinement, reduction to pay grade E-1, forfeiture of

all pay and allowances, and a dishonorable discharge.  The convening authority approved the sentence as adjudged.

The appellant raises three assignments of error: (1) that the military judge committed reversible error by not defining the element of "force" for a charge of rape committed by unlawful force; (2) that the military judge abused his discretion by failing to dismiss, as an unreasonable multiplication of charges, several sexual assault charges that arose out of a single criminal act; and (3) that the military judge erred in calculating the maximum punishment for rape and sexual assault.

After careful consideration of the record of trial, the appellant's assignments of error, and the pleadings of the parties, we find the evidence introduced at trial insufficient to support a conviction for rape.  Our decision in this regard renders moot the appellant's first assignment of error.  We also find merit with the appellant's second assignment of error.  After taking corrective action in our decretal paragraph, we conclude that the remaining findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains.  Arts. 59(a) and 66(c), UCMJ.

## Background

The events that are the subject of charges in this case began during the evening of 27 July 2012, and continued into the early morning hours of 28 July 2012.  Prior to that time, the victim, Private First Class (PFC) AA, had known the appellant in a social context, but she denied having had any sexual interest in him.  The appellant characterized their relationship differently.  He testified that both he and PFC AA had previously expressed mutual sexual interest in one another, and that they planned to meet in PFC AA's room to have sex on the night of the incident after the appellant completed his watch.

At approximately 2000 on 27 July 2012, PFC AA attended a party at an off base hotel and consumed alcohol.  PFC AA testified that over the course of two or three hours she had four mixed drinks and one and a half beers.  The record further indicates that the mixed drinks each contained approximately 3 ounces of vodka (double shots) mixed with 3 ounces of orange juice.  When PFC AA returned to her barracks room at around 0030, she fell asleep on her bed with her clothes on.

2

The appellant, who was on watch until 0200, did not see PFC AA before she went to sleep. After his watch was over, the appellant asked PFC QP, the oncoming watchstander for the female floor of the barracks, to see if PFC AA's door was open and if she was awake. PFC QP declined, but did try to text PFC AA on the appellant's behalf. When PFC AA failed to answer, PFC QP told the appellant that PFC AA had "came back drunk" and that she was probably asleep. Record at 468-69. When the appellant asked PFC QP if he should have sex with PFC AA, she said "No. And if he did, that was on him." *Id*. at 497.

Despite PFC QP's warnings, the appellant left the watch station and shortly thereafter entered PFC AA's room. PFC AA has little memory of the incident that followed, and only recalls snapshots of a male figure by the bed, someone "directly on or on top of [her]" having sex with her, and someone helping to put her clothes back on. *Id*. at 321.

Following the incident the appellant made several highly incriminating statements. Immediately after he left PFC AA's room he told PFC QP that he "shouldn't have had sex with her" and asked PFC QP "Is that rape?" *Id*. at 474-75. The appellant then asked PFC QP to tell PFC AA "the next morning what happened and tell her that he was sorry." *Id*. at 475. Later that day the appellant met with PFC AA and repeatedly apologized for his actions. Moreover, when he was interrogated by the Naval Criminal Investigative Service (NCIS), the appellant admitted that he took PFC AA's clothes off, had sexual intercourse with her, and then tried to redress her. The appellant also told NCIS: "I basically violated her . . . I think she was still passed out. . . . her eyes were still closed . . . [she was] talking in her sleep . . . ." *Id*. at 285-89. Moreover, the appellant told NCIS that when PFC AA confronted him the next day he "felt very low, [he] wanted to throw up [and he] felt like scum." *Id*. at 287.

Additional facts necessary for the resolution of particular assignments of error are included below.

### Unlawful Force in the New Article 120

The appellant's first assignment of error alleges that the military judge erred by not instructing the members on the definition of "force," for the offense of rape committed by "unlawful force." Although we ultimately find the rape conviction factually insufficient, *see infra*, we nonetheless must answer, as a predicate question, how the definitions of

3

force and unlawful force related to one another within the new Article 120, UCMJ.

As noted above, the offenses in this case are all alleged to have occurred on or about 27 July 2012. The National Defense Authorization Act for Fiscal Year 2012 contained changes to Article 120, UCMJ, which had taken effect by the time of the appellant's alleged misconduct. Among those changes was a significant revision to the offense of rape. The new statute reads as follows:

> (a) *Rape*. Any person subject to this chapter who commits a sexual act upon another person by—
>
> (1) using unlawful force against that other person;
> (2) using force causing or likely to cause death or grievous bodily harm to any person;
> (3) threatening or placing that other person in fear that any person will be subjected to death, grievous bodily harm, or kidnapping;
> (4) first rendering that other person unconscious; or
> (5) administering to that other person by force or threat of force, or without the knowledge or consent of that person, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of that other person to appraise or control conduct;
>
> is guilty of rape and shall be punished as a court-martial may direct.

10 U.S.C. § 920(a).

The new statute also contains definitions for the terms force and unlawful force. Force is defined as:

> (A) the use of a weapon;
> (B) the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or
> (C) inflicting physical harm sufficient to coerce or compel submission by the victim.

10 U.S.C. § 920(g)(5). "Unlawful force" is defined as "an act of force done without legal justification or excuse." 10 U.S.C. § 920(g)(6).

In the case at bar, the Government treated "force" and "unlawful force" as if they were separate, unrelated concepts. During his closing argument, trial counsel told the members:

> The definitions being "force". The use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person. *That's not what the government is submitting is the case here. The government submits that it is the next one.* That it's "unlawful force": Force done without legal justification or excuse. Tell her in the morning it was me. He did not have justification nor does he have an excuse for why he went in and touched PFC [AA] in order to have sex with her.

Record at 806 (emphasis added). The military judge then instructed the members on the definition of "unlawful force," 10 U.S.C. § 920(g)(6), but did not instruct them on the statutory definition of force. 10 U.S.C. § 920(g)(5).

Contrary to trial counsel's argument, unlawful force is not a separate, distinct, and lesser type of force that can sustain a conviction for rape. Rather, the definitions set forth in Article 120 must be read together. There must be force, as defined by the statute, and that force must be unlawful. In other words, the Government must prove beyond a reasonable doubt that the accused used a weapon; used such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or inflicted physical harm sufficient to coerce or compel submission by the victim, *and* that those acts were "done without legal justification or excuse." *See* 10 U.S.C. § 920(g)(5)–(6).

### Factual Sufficiency of the Rape Charge

Having resolved the type and level of force required for a rape conviction under the new Article 120, UCMJ, we look to the record to see if the Government met the burden set forth above. We find that it did not.

Under Article 66(c), UCMJ, we review issues of factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is whether, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," this court is "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J.

5

324, 325 (C.M.A. 1987).  However, reasonable doubt does not mean the evidence must be free from conflict. *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).

Our review of the record fails to discern any evidence that the appellant used force, as defined in the statute, to commit a sexual act upon PFC AA.  The record shows that she was intoxicated and asleep, but there is no indication that the appellant used "strength sufficient to overcome the said [PFC AA]," as was alleged in the charge sheet.  The record did show, as pointed out by the Government in its' brief, that the appellant was on top of PFC AA during the intercourse.  Prosecution Exhibit 1; Government's Brief of 18 Mar 2014 at 10.  However simply being on top of the other person during a sexual act, without anything more, is not enough to prove beyond a reasonable doubt the "use of such physical strength or violence as is sufficient to overcome, restrain, or injure."  10 U.S.C. § 920(g)(5).  Accordingly, we conclude that the appellant's rape conviction cannot withstand the test for factual sufficiency and will set aside that finding of guilty and dismiss that specification.[1]

### Unreasonable Multiplication of Charges

*Multiple Charges for Exigencies of Proof*

The appellant argues the military judge abused his discretion by failing to merge for findings multiple sexual assault convictions arising out of a single criminal act.  We agree.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."  RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  We review five non-exclusive factors from *United States v. Quiroz*, 55 M.J. 334, 338-39

---

[1] As is discussed more fully in a later portion of this opinion, this court would, given the facts at bar, typically affirm the lesser included offense of sexual assault committed by causing bodily harm.  10 U.S.C. § 920(b)(1)(B).  That offense merely requires an offensive touching, "however slight, including any nonconsensual sexual act . . . ."  10 U.S.C. § 920(g)(3). However, the appellant was separately charged with, and acquitted of, that offense.  Although the specification the appellant was acquitted of alleged a different factual basis, i.e. that the appellant "touched [PFC AA's] body with his hand," we believe it prudent, given the appellant's other convictions for the same sexual act, to avoid potential double jeopardy issues.  Accordingly, we will dismiss the specification.

(C.A.A.F. 2001) to determine whether there is an unreasonable multiplication of charges: (1) whether the accused objected at trial; (2) whether each charge and specification is aimed at distinctly separate criminal acts; (3) whether the number of charges and specifications misrepresent or exaggerate the appellant's criminality; (4) whether the number of charges and specifications unreasonably increase the appellant's punitive exposure; and, (5) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges. These non-exclusive factors are weighed together, and "one or more factors may be sufficiently compelling." *United States v. Campbell,* 71 M.J. 19, 23 (C.A.A.F. 2012).

"A military judge's decision to deny relief for unreasonable multiplication of charges is reviewed for an abuse of discretion." *Id.* at 22 (citing *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004)) (additional citation omitted). Within the context of unreasonable multiplication of charges, the military judge generally has wide discretion to dismiss offenses, merge offenses, or merge offenses only for purposes of sentencing. *See Id. at* 25. However, "when a 'panel return[s] guilty findings for [multiple] specifications and it was agreed that these specifications were charged for exigencies of proof, it [is] incumbent' [upon the military judge] either to consolidate or dismiss [the contingent] specification[s]," not merely merge then for sentencing purposes. *United States v. Elespuru*, 73 M.J. 326, 329-30 (C.A.A.F. 2014) (quoting *United States v. Mayberry*, 72 M.J. 467, 467-68 (C.A.A.F. 2013)) (additional citation omitted).

Although the Government in this case did not concede that the various sexual assault offenses were pled in the alternative to deal with contingencies of proof, the record clearly supports that conclusion. Both remaining aggravated sexual assault specifications allege the same sexual act, on the same date, and at the same place. One alleges that the appellant committed the sexual act while PFC AA was asleep or otherwise unaware; the other alleges the same sexual act, but while PFC AA was incapable of consenting due to impairment by an intoxicant. While we find that it was entirely proper for the Government to charge the appellant in this fashion, it is not appropriate for him to stand convicted of two sexual assault offenses based upon a single criminal act. *See Elespuru*, 73 M.J. at 329-30; *Campbell*, 71 M.J. at 24. Accordingly, we find that the military judge erred by only merging the offenses for sentencing purposes.

7

*Consolidation, Dismissal, and Conditional Dismissal*

When a military judge is presented with findings that reflect an unreasonable multiplication of charges that cannot be adequately addressed by merging the charges for sentencing purposes, the military judge must then decide whether to consolidate[2] or dismiss the affected specifications. This is a significant decision that should be carefully considered by the military judge. Specifically, consideration should be given to what happens if, on appeal, the remaining offense is set aside.

Dismissal of a lesser included offense in favor of the remaining greater offense may be the appropriate remedy where the unreasonably multiplied offenses stand in a greater-lesser relationship. In other cases, consolidation may be the more appropriate remedy as "the findings of guilty as to [consolidated] specifications are *not* affected because they still apply to the portions of the specifications added to the remaining specification . . . ." *United States v. Sorrell*, 23 M.J. 122, 122 n.1 (C.M.A. 1986) (emphasis added). Consolidation is accomplished by simply combining the operative language from each specification into a single specification that adequately reflects each conviction.[3]

When consolidation is impracticable, such as when the guilty findings involve violations of different UCMJ articles, military judges should consider a conditional dismissal of one or more findings. Conditional dismissals "become effective when direct review becomes final in the manner described in Article 71(c), UCMJ" and therefore "protect the interests of the Government in the event that the remaining charge is dismissed during [appellate] review." *United States v. Britton*, 47 M.J. 195, 203-05 (C.A.A.F. 1997) (Effron, J., concurring).

Although the use of conditional dismissals has not been widespread in military jurisprudence, there have been several

---

[2] As used in this context, there is no difference between the terms "merge" and "consolidate." *Compare Campbell,* 71 M.J. at 23 (discussing a military judge's discretion to "merge" offenses that create an unreasonable multiplication of charges) with *Elespuru*, 73 M.J. at 329-30 (directing military judges to consolidate or dismiss such charges when they were pled as exigencies of proof).

[3] An example of such a specification is contained in our decretal paragraph, *infra*. Since this action is being taken by the military judge post-conviction to rectify an unreasonable multiplication of charges, we do not find that the resultant duplicitous specification violates RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

opinions, issued by both our superior court and our sister courts, signaling the approval of their use. In his concurring opinion in *Britton*, Judge Effron endorsed the use of conditional dismissals by the appellate courts, and opined that "the power to order such a conditional dismissal is well within the inherent authority of appellate courts." *Britton*, 47 M.J. at 204. That opinion was later cited by the Air Force Court of Criminal Appeals when it conditionally dismissed a charge "subject to final review pursuant to Article 71(c), UCMJ, in order to allow the government to meet the exigencies of proof . . . ." *United States v. Stanley*, 60 M.J. 622, 630 (A.F.Ct.Crim.App. 2004), *review denied*, 60 M.J. 388 (C.A.A.F. 2004).

Although the language in *Britton* might lead one to believe that only appellate courts have the power to conditionally dismiss charges, at least two of our sister courts have embraced their use at the trial court level. In *United States v. Woods*, a case that predates the *Britton* decision by eleven years, the Army Court of Military Review conditionally dismissed a charge and its sole specification, and then suggested that:

> In future cases of a similar nature, it might be appropriate for the military judge, after completing the providence inquiry and duly entering findings of guilty to both offenses, to *conditionally* dismiss the less serious offense or the offense which least adequately describes appellant's criminal conduct. Dismissal can be accomplished either alone or in conjunction with specification consolidation.

21 M.J. 856, 876 n.33 (A.C.M.R. 1986), *rev'd on other grounds*, 26 M.J. 372 (C.M.A. 1988).

In *United States v. Frazier*, 51 M.J. 501 (C.G.Ct.Crim.App. 1999), the Coast Guard Court of Criminal Appeals, sitting *en banc*, also endorsed the use of conditional dismissals by trial judges. In *Frazier*, the appellant was convicted by a panel of members of indecent acts, in violation of Article 134, UCMJ, and with violating an order relating to the same sexual acts, in violation of Article 92, UCMJ. After the members returned guilty findings to both offenses, the military judge dismissed the Article 92 offense "on the condition that it would be restored should [the] underlying indecent act offense be set aside on review." *Id*. at 502. That condition was then met, and the validity of the conditional dismissal was tested when the Coast Guard Court of Criminal Appeals set aside the indecent

acts conviction. *Id*. at 505-06. The court first addressed the question of the trial judges authority, holding that "[n]otwithstanding the limits" expressed in *Britton,* there is "no reason to believe that the trial judge lacks [the] authority" to enter a conditional dismissal. *Id*. at 506. The court then went on to give effect to the trial judge's ruling by restoring and affirming the previously dismissed Article 92 violation. *Id*. at 506-07.

Like our sister courts, we also believe that trial judges have the inherent authority to conditionally dismiss a charge or specification, and should consider the use of such a procedure where consolidation is impracticable.

Applying the reasoning set forth above to the case at bar, we will consolidate the appellant's two sexual assault convictions in our decretal paragraph.

## Improper Calculation of Maximum Punishment

In his third assignment of error, the appellant argues that the military judge erred when he calculated the maximum punishment for rape and sexual assault under Article 120, UCMJ. At the time of his misconduct, the appellant argues, the President had not defined maximum punishment limitations under Article 120, UCMJ. Therefore, he contends, the maximum punishment at his trial was limited to the jurisdictional maximum of a summary court-martial. Appellant's Brief of 18 Dec 2013 at 18. We disagree.

Assuming that the appellant did not affirmatively waive this issue by specifically conceding on the record that the maximum punishment for rape was life without the possibility of parole, Record at 863, we conclude that the military judge correctly determined the maximum punishment. *See United States v. Booker,* 72 M.J. 787, 807 (N.M.Ct.Crim.App. 2013), *appeal denied sub nom. United States v. Schaleger*, 73 M.J. 92 (C.A.A.F. 2013) (summary disposition).[4]

## Sentence Reassessment

Because of our action on the findings, we will reassess the sentence in accordance with the principles set forth in *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), *United States v.*

---

[4] The appellant acknowledges that our decision in *Booker* controls; however, he raises this assignment of error solely to preserve the issue. Appellant's Brief at 18-19.

10

*Cook*, 48 M.J. 434, 438, (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986).  Although a "'dramatic change in the penalty landscape' gravitates away from the ability to reassess" a sentence, *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)), we find no such change here.

While our decision reduces the maximum possible punishment from confinement for life without the possibility of parole to confinement for 30 years, both punishments are so far removed from the three years of confinement actually awarded by the members as to render the difference legally insignificant.  More importantly, nothing in our decision changes the number or factual nature of the criminal acts considered by the panel when they were determining a proper sentence.  The members sentenced the appellant based upon his having committed a single sexual act upon PFC AA as she lay asleep and intoxicated in her barracks room.  Moreover, they were instructed to consider all of the convictions that arose out of that single act as one offense for sentencing purposes.  While our decision re-characterizes the appellant's offense as a sexual assault, rather than a rape, that difference, in and of itself, is not enough to constitute a dramatic change in the penalty landscape.  Finally, the facts adduced on the affirmed charge and specification provide ample justification for the sentence the members awarded.  Accordingly, we are confident that the members would have imposed, and the convening authority would have approved, the previously adjudged sentence to three years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge.

### Conclusion

The finding of guilty to Specification 1 of Charge II, rape, is set aside and that specification is dismissed with prejudice.  Specification 2 of Charge II and the sole specification under the Additional Charge are hereby consolidated into a single specification to read as follows:

> In that Private First Class Germaine L. Thomas, U.S. Marine Corps, Marine Corps Combat Service Support School, Training Command, Camp Johnson, North Carolina, did, at or near Camp Johnson, North Carolina, on or about 27 July 2012, commit sexual acts upon Private First Class AA, U.S. Marine Corps, to wit: penetrating her vulva with his penis when the accused knew or reasonably should have known that

11

Private First Class AA was asleep or otherwise unaware that the sexual act was occurring; and penetrating her vulva with his penis when the accused knew or reasonably should have known that Private First Class AA was incapable of consenting to the sexual act due to impairment by an intoxicant.

With this modification, the findings and the sentence are affirmed.

Judge HOLIFIELD and Judge BRUBAKER concur.

For the Court

R.H. TROIDL
Clerk of Court

12