# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant DANIEL H. CHIN
### United States Air Force

## ACM 38452 (recon)

## 12 June 2015

Sentence adjudged 14 June 2013 by GCM convened at Grand Forks Air Force Base, North Dakota. Military Judge: Joshua E. Kastenberg (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 10 months, forfeiture of all pay and allowances, and reduction to E-2.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

UPON RECONSIDERATION

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

CONTOVEROS, Judge:

At a general court-martial composed of a military judge sitting alone, the appellant was convicted, in accordance with his pleas, of six specifications of failure to obey a lawful general order or regulation, seven specifications of dereliction of duty, one specification of larceny, and five specifications of unauthorized possession of documents

relating to the national defense and failure to deliver said documents to the officer or employee of the United States entitled to receive them. The charges and specifications represent violations of Articles 92, 121, and 134, UCMJ, 10 U.S.C. § 892, 921, 934. The appellant was sentenced to a bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances, and reduction to E-2. In an act of clemency, the convening authority approved only 10 months of confinement,[1] but otherwise approved the sentence as adjudged.

Before us the appellant challenges the providence of his plea of guilty to larceny. In addition, pursuant to our Article 66, UCMJ, 10 U.S.C. § 866, authority, we review whether the charged specifications are multiplicious or constitute an unreasonable multiplication of charges.

On 7 April 2015, this court issued its decision in this case, finding that some of the specifications should be dismissed or merged for sentencing as an unreasonable multiplication of charges as explained below. The panel that originally decided this case subsequently granted the government's request for reconsideration.

*Background*

The appellant was assigned to multiple duty locations during the charged timeframes and worked in the Cyber Transport career field. In that capacity, he had access to classified information and computer systems. On several occasions and from various locations, the appellant removed classified information and retained it for his future use. As he accumulated the classified information, he improperly transported and stored it as he traveled between duty stations and while on leave. Although he had numerous opportunities to deliver the material to appropriate authorities, he did not do so. On one occasion, he showed classified information to unauthorized persons.

The appellant received a government hard drive for use with a government desktop computer. Upon discovering that the particular desktop computer had been turned in and was no longer in use, the appellant put the hard drive into his personal bag and took it home. The hard drive was later discovered at the appellant's home during a search conducted as part of the investigation into this case.

Additional facts are included as necessary in our analysis below.

---

[1] The convening authority's action approving a lesser term of confinement than that adjudged was not required under the terms of the pretrial agreement; the adjudged confinement was less than the maximum confinement authorized by the pretrial agreement.

*Providence of the Plea*

We review a military judge's decision to accept a guilty plea for an abuse of discretion and review questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.*; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991) (stating that a plea of guilty should not be overturned as improvident unless the record reveals a substantial basis in law or fact to question the plea).

The military judge may consider both the stipulation of fact and his inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). "In reviewing the providence of Appellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)). A military judge abuses his discretion when accepting a plea if he does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969). This is an area in which the military judge is entitled to significant deference. *Inabinette*, 66 M.J. at 322.

The Specification of Charge II alleges a violation of Article 121, UCMJ, for stealing a computer hard drive, which was military property of some value. The appellant signed a stipulation of fact in which he admitted that he did take the hard drive with the intent to permanently deprive the government of its use.

During the providence inquiry, the military judge asked the appellant additional questions about the taking of the hard drive. The appellant stated that he discovered the hard drive as he was cleaning up his work area, that he was instructed to "get rid of it" as it was no longer needed, and that instead of properly disposing of the hard drive through appropriate military channels, he put it in his bag, took it home, and "didn't think about it again." The following colloquy then took place:

> [Military Judge]: Did you intend to ever give this hard drive back or turn it in? Or, did you at some point intend to keep it permanently?
>
> [Appellant]: Sir, I deemed the value of the hard drive of such insignificance that I did not—I did not think about it. And, had I thought about it again, I would have taken it to the [disposal] office and turned it in. But I did not think about it from the moment I took it home and put it into my tool closet.

. . .

>[Military Judge]: Do you agree then and admit that between on or about 1 January 2010 and on or about 31 January 2012, you wrongfully took a computer hard drive which was military property from the armed forces of the United States with the intent to permanently deprive the armed forces of the use of that hard drive?
>
>[Appellant]: Yes, Your Honor.

The appellant asserts on appeal that the earlier response "sets up matter inconsistent with the plea" in that he indicated he did not have the requisite intent to permanently deprive the government of the use of the hard drive. *Hines*, 73 M.J. at 124 (citation and internal quotation marks omitted). Because that inconsistency was not resolved by the military judge, he argues, his plea should be rejected. We disagree.

We find no substantial basis for questioning the guilty plea in law or in fact. The military judge did not abuse his discretion in accepting the guilty plea. The appellant in both his written stipulation of fact and his colloquy with the military judge admitted that he took the hard drive with the intent to permanently deprive the government of the same. To the extent that any inconsistency was raised by the appellant's first response above, it was fully resolved by the military judge later in the same inquiry.

### *Multiplicity/Unreasonable Multiplication of Charges*

During our initial review of this case, we dismissed one specification of failure to obey a lawful general order or regulation and two specifications of dereliction of duty, and merged for sentencing the five specifications charged under Article 134, UCMJ. In dismissing the specifications, we reasoned, in part, that those three specifications were charged in the alternative for exigencies of proof. The government timely moved this court to reconsider our opinion,[2] arguing: (1) this court erroneously found the specifications were charged in the alternative for exigencies of proof,[3] and (2) our superior court's decision in *Gladue* prohibited this court from finding unreasonable multiplication of charges where the issue had been waived at trial. *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009). We granted reconsideration to make clear that our analysis did not turn on whether the offenses were in fact charged in the

---

[2] The government moved this court for reconsideration and reconsideration en banc. We granted the motion for reconsideration but denied the motion for reconsideration en banc.

[3] In support of their motion for reconsideration, the government contemporaneously moved to submit an affidavit from the lead trial counsel addressing whether any specifications were charged in the alternative. We denied the motion and did not consider the affidavit or any references to the affidavit included in the substantive motion for reconsideration.

alternative, but rather on the peculiarity of the charging decisions for which we find no reasonable explanation.

The appellant entered into a pretrial agreement in this case which contained a "waive all waivable motions" provision. Upon inquiry into what motions would have been raised absent that provision in the pretrial agreement, trial defense counsel stated she would have raised a "multiplicity motion both [on] findings and sentencing."[4] The military judge specifically found that multiplicity motions may be waived as part of a pretrial agreement,[5] and there was no further inquiry or discussion on that particular issue.

In *Gladue*, our superior court held that a "waive all waivable motions" provision waived, rather than forfeited, a claim of multiplicity on appeal and therefore the multiplicity claim was extinguished and could not be raised on appeal. The court held multiplicity was waived because the pretrial agreement required the appellant to waive all waivable motions, the military judge conducted a thorough inquiry to ensure the appellant understood the effect of this provision, and the appellant explicitly indicated his understanding that he was waiving the right to raise any waivable motion. *Id.* The court also stated the same position would result for claims of unreasonable multiplication of charges raised on appeal. *Id.*

Ordinarily, an affirmative waiver of a claim of multiplicity and unreasonable multiplication of charges would end our inquiry. Our court has consistently found, in light of *Gladue*, that such waiver precludes review on appeal. Recently, in a case that did not involve a waive all waivable motions provision, this court held that the appellant affirmatively waived his multiplicity claim where trial defense counsel affirmatively elected not to raise the issue at trial, although we nonetheless proceeded to discuss the merits of the claim under a forfeiture analysis. *United States v. Parker*, 73 M.J. 914, 918 (A.F. Ct. Crim. App. 2014); *see also United States v. Ponder*, ACM S32161, unpub. op. at 5–6 (A.F. Ct. Crim. App. 28 October 2014) (finding the appellant expressly waived any claim of multiplicity and unreasonable multiplication of charges as part of a "waive all waivable motions" provision in his pretrial agreement and therefore extinguished his right to raise the issues on appeal); *United States v. Dalton*, ACM 38463, unpub. op. at 5 (A.F. Ct. Crim. App. 16 December 2014) (finding the appellant was entitled to no relief on a multiplicity issue where he affirmatively waived that issue as part of a pretrial agreement at trial).

---

[4] Although trial defense counsel mentions only multiplicity as the basis for a motion she would have raised but for the pretrial agreement, it appears she would have raised the issue of unreasonable multiplication of charges as well.

[5] The court notes that the record of trial reflects that the military judge found that multiplicity motions may be "raised" as part of a pretrial agreement, rather than "waived." We presume this to be a scrivener's error as there was no further discussion on the record about multiplicity or unreasonable multiplication of charges. Under different circumstances, however, such an error could result in significant, unnecessary appellate litigation. Therefore, we remind court reporters, trial counsel, staff judge advocates, and military judges of the importance of ensuring that the record of trial accurately reflects the proceedings. Rule for Courts-Martial (R.C.M.) 1104(a).

However, as our colleagues in the Army Court of Criminal Appeals have noted, Article 66(c) empowers the service courts to consider claims of multiplicity or unreasonable multiplication of charges even when those claims have been waived. Although declining to exercise its broad Article 66, UCMJ, power in *United States v. Rivera*, the Army court noted: "Notwithstanding *Gladue*, under Article 66(c), UCMJ, this court may affirm only such findings of guilty and sentence as we 'find[] correct in law and fact and determine[], on the basis of the entire record, should be approved.'" *United States v. Rivera*, Army 20130397, unpub. op. at 3 (Army Ct. Crim. App. 15 December 2014) (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)) (alterations in original); *see also United States v. Martinez*, Army 20120042, unpub. op. at 3 (Army Ct. Crim. App. 25 November 2013) (finding *Gladue* distinguishable, the court dismissed a specification on multiplicity grounds despite the "waive all waivable motions" provision in the pretrial agreement).

The Army court's position is consistent with our superior court's direction in *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991), in which the court held that a service court need not apply waiver or plain error review in the interest of justice. *See also United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990) (holding that a military court of criminal appeals has "awesome, plenary, *de novo* power of review . . . to, indeed, 'substitute its judgment' for that of the military judge" and need not apply deferential standards of review when it deems such deference inappropriate) (quoting *United States v. Martin*, 20 M.J. 227, 230 (C.M.A. 1985)).

We agree with our sister court that, even after *Gladue*, this court's statutory authority to affirm findings of guilty and any or all of the resultant sentence is limited to affirming only those that we find correct in law and fact and determine, on the basis of the entire record, *should* be approved. *See* Article 66(c), UCMJ. Because of the unreasonable multiplication of charges so plainly presented in this case, we elect to exercise our plenary, de novo power of review and have determined that not all of the findings of guilty should be approved. We recognize this is a significant departure from our consistent practice of declining to review, on appeal, issues that were waived at trial. This deviation from our past treatment and application of waiver is warranted by the facts of this case, as explained in the analysis that follows. We differentiate this case from those in which we have found waiver, in that the totality of the circumstances presented here convinces us that the charging scheme grossly exaggerates the appellant's criminality. Under our broad Article 66(c) authority, we find that not all of the appellant's convictions should be approved.

A. Analysis

In the context of multiplicity and unreasonable multiplication of charges, three concepts may arise: multiplicity for purposes of double jeopardy, unreasonable

multiplication of charges as applied to findings, and unreasonable multiplication of charges as applied to sentence.

Multiplicity in violation of the Double Jeopardy Clause of the Constitution occurs when "'a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct.'" *United States v. Anderson*, 68 M.J. 378, 385 (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993); *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015). The Supreme Court laid out a "separate elements test" for analyzing multiplicity issues: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly, multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564. Where one offense is necessarily included in the other under the separate elements test, legislative intent to permit separate punishments may be expressed in the statute or its legislative history, or "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other." *Teters*, 37 M.J. at 376–77.

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). Our superior court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001) (citation and internal quotation marks omitted). Unlike multiplicity, where an offense found multiplicious for findings is necessarily multiplicious for sentencing, the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). In a case where the *Quiroz* factors indicate the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Quiroz*, 55 M.J. at 339.

Finding that multiplicity motions could be waived as part of pretrial agreements, the military judge did not address the merits of any such motion or the related issue of unreasonable multiplication of charges. We sua sponte review these issues for the first time on appeal.

We conclude that the failure to obey a lawful general order or regulation specifications, dereliction of duty specifications, and the unauthorized possession, willful retention, and failure to deliver documents relating to the national defense specifications are not multiplicious. The six specifications charged under Article 92(1), UCMJ, required proof that there was a certain lawful general order or regulation in effect, that the appellant had a duty to obey it, and that the appellant failed to obey it. The seven specifications charged under Article 92(3), UCMJ, required proof that the appellant had certain duties, that he knew or reasonably should have known of certain duties, and he was willfully or negligently derelict in those duties. Finally, the five specifications under the General Article, as charged, required proof that the appellant had unauthorized possession of documents relating to the national defense, that he willfully retained and failed to deliver said documents to the officer or employee of the United States entitled to receive them, in violation of Title 18, United States Code, Section 793(e), and that said conduct was of a nature to bring discredit upon the armed forces.[6] While violations of Article 92(1) and Article 92(3), UCMJ, require proof of a duty to obey and associated

---

[6] Inexplicably, the government included both the relevant United States Code provision and the terminal element of "conduct of a nature to bring discredit upon the armed forces" in its specifications under Charge III. As the government chose to charge the appellant under both Clauses 2 and 3 of Article 134, UCMJ, 10 U.S.C. § 934, in each relevant specification, it bound itself to proving both elements in each of them.

failure to obey, each requires an element the other does not—namely, the existence of a lawful general order or regulation in the former and the knowledge element of the latter. Likewise, the specifications under Article 134, UCMJ, required proof of a federal statute plus the General Article's terminal element, elements not required to prove offenses under Article 92, UCMJ. Therefore, although there is certainly overlap between the facts and circumstances surrounding the commission of the offenses, one offense is not necessarily included in the other. Accordingly, we hold that the specifications as charged are not multiplicious as a matter of law.

Having found the specifications are not multiplicious, we next consider whether an unreasonable multiplication of charges has occurred. Applying the *Quiroz* factors, we find:

(1)   The appellant did not object at trial, solely because of the pretrial agreement in effect.

(2)   Each offense is not based on separate criminal acts, because each does not address a distinct criminal purpose. For example, one of the specifications charges the appellant with showing classified information to unauthorized persons in violation of Article 92(1), UCMJ; the same unauthorized disclosure was charged as a separate specification under Article 92(3), UCMJ. The charging scheme was perhaps an attempt to allow for exigencies of proof, but that became moot in a judge alone, guilty plea trial.

(3)   The three charges and eighteen related specifications misrepresent and exaggerate the appellant's criminality. In several instances, the factual bases for the offenses are the same or represent a continuing course of conduct.

(4)   The charging scheme unreasonably increased the appellant's punitive exposure (see detailed explanation in the "Remedy" section, *infra*).

(5)   The underlying conduct that forms the basis of one or more charged offenses differs in no meaningful way on the face of the charge sheet or in the facts elicited at trial. In more than one instance, charges were multiplied from a single criminal transaction. The charging scheme was unreasonable and is at least some evidence of overreaching in the exercise of prosecutorial discretion.

We note, as has our superior court, that no particular factor is a prerequisite to finding an unreasonable multiplication of charges. *Campbell*, 71. M.J. at 23. Similarly, "one or more factors may be sufficiently compelling, without more, to warrant relief on unreasonable multiplication of charges…." *Id*. (*citing Quiroz*, 55 M.J. at 338-39). Here, several of the charged specifications overlap with respect to date and place of commission, the predicate facts, and often involve a continuing course of conduct. They

cannot fairly be said to be aimed at separate wrongs. We find that the charging decisions in this case constituted an unreasonable multiplication of charges as applied to both findings and sentencing. We must therefore consider the appropriate remedy.

B. Remedy

    1. Unreasonable Multiplication of Charges for Findings

We turn first to the unreasonable multiplication of charges as applied to findings, which requires us to determine whether merger or dismissal of the affected specifications is more appropriate. *Campbell*, 71 M.J. at 22–23 (discussing the options to merge or dismiss offenses that create an unreasonable multiplication of charges for findings).

Our sister court recently examined the potential remedies for an unreasonable multiplication of charges for findings. In its review of three possible remedies, the Navy-Marine Corps Court of Criminal Appeals asserted that dismissal of a lesser included offense in favor of the greater offense may be appropriate where the two stand in a greater-lesser relationship. *United States v. Thomas*, 74 M.J. 563, 568–69 (N.M. Ct. Crim. App. 2014). The court also discussed the remedy of consolidation, or merger, of the affected specifications in appropriate cases to reflect each conviction in a single specification so as not to disturb the findings of guilty with respect to those specifications. *Id*. at 569. In a more detailed analysis, the court then suggested that conditional dismissal may be an appropriate alternative remedy, particularly where consolidation is impracticable, and should be considered more often by trial judges. The court pointed out that "[c]onditional dismissals 'become effective when direct review becomes final in the manner described in Article 71(c), UCMJ' and therefore 'protect the interests of the Government in the event that the remaining charge is dismissed during [appellate] review.'" *Id*. (quoting *United States v. Britton*, 47 M.J. 195, 203–05 (C.A.A.F. 1997) (Effron, J. concurring) (second alteration in original)). Indeed, our own court has employed the remedy of conditional dismissal to allow the government to meet the exigencies of proof through final appellate action. *See United States v. Stanley*, 60 M.J. 622, 630 (A.F. Ct. Crim. App. 2004) (conditionally dismissing one of two charges stemming from the same underlying conduct and reassessing the sentence accordingly).

Applying the rationale of our sister court in *Thomas*, we conclude that merging the offenses for findings is impracticable in this case. The guilty findings not only involve violations of different UCMJ articles, but even specifications under the same UCMJ article allege violations of different provisions within that article and, in some instances, further allege violations of different orders, regulations, or statutes. The six specifications charged under Article 92(1), UCMJ, for example, allege violations of four separate and distinct lawful general orders or regulations. The charges of which the appellant in this case was found guilty do not lend themselves to consolidation. We also

decline to employ the remedy of conditional dismissal, as we find dismissal to be the more appropriate remedy in this case.[7]

Specifications 1[8], 2[9], and 7[10] of Charge I essentially encompass the same conduct, namely that the appellant failed to properly safeguard classified information, and the charged timeframe for all three are identical. In reviewing Specifications 1 and 2, we note that the *only* difference between the two as reflected on the charging document is the location of the offense, and the difference is slight: the first charges the misconduct as occurring "at or near Grand Forks Air Force Base (AFB), North Dakota," while the second charges the misconduct as taking place "at or near Grand Forks, North Dakota." In every other respect, the specifications read exactly the same. The appellant admitted that he failed to properly store classified materials both at his work station located on Grand Forks AFB as well as at his off-base residence in the city of Grand Forks, as alleged in Specifications 1 and 2, respectively. We find that the improper storage of classified material by the appellant both on base and at his nearby residence occurred "at or near" Grand Forks AFB, such that they are more appropriately viewed as one offense and should have been charged as such. Charging these offenses as two separate specifications misrepresents and exaggerates the appellant's criminality. Accordingly, we set aside and dismiss Specification 2 of Charge I.

Turning to Specification 7 of Charge I, we find that it too should be set aside. Though worded differently, Specifications 1 and 7 of Charge I seek to hold the appellant criminally responsible for the same underlying offense, rather than separate criminal acts. Specification 1 specifically alleges that the appellant improperly stored the classified material, while Specification 7 alleges he left the information unsecured; we find this to be a distinction without a difference. The facts elicited at trial make this even more clear. During the providence inquiry with the military judge, the appellant laid out the exact same facts when independently asked why he was guilty of each of these specifications. In short, he stated that he had a classified diagram from a previous duty station which he kept in a folder for reference in his current job and he left that folder unsecured on his

---

[7] In declining to elect the remedy of conditional dismissal of the specifications, we note that this remedy seems better suited to cases in which the appellant pled not guilty at trial.

[8] Specification 1 of Charge I asserted that the appellant, did at or near Grand Forks Air Force Base, North Dakota, between or about 28 February 2012 and 18 April 2012, fail to obey a lawful general regulation, to wit: DoDM 5200.01-V3, dated 24 February 2012, by failing to properly safeguard classified information in his possession, to wit: failing to store classified materials under conditions adequate to deter and detect access by unauthorized persons.

[9] Specification 2 of Charge I asserted that the appellant, did at or near Grand Forks, North Dakota, between or about 28 February 2012 and 18 April 2012, fail to obey a lawful general regulation, to wit: DoDM 5200.01-V3, dated 24 February 2012, by failing to properly safeguard classified information in his possession, to wit: failing to store classified materials under conditions adequate to deter and detect access by unauthorized persons.

[10] Specification 7 of Charge I asserted that the appellant, who knew of his duties, at or near Grand Forks Air Force Base, North Dakota, between or about 28 February 2012 and 18 April 2012, was derelict in the performance of those duties in that he negligently failed to refrain from leaving classified information in his possession unsecured, as it was his duty to do.

desk. The stipulation of fact addresses both specifications in one paragraph, which provides:

> The [appellant] had a duty to refrain from leaving classified information unsecured and was aware of the regulations, specifically [Department of Defense Manual] 5200.01-V3, to store classified materials under conditions adequate to deter and detect access by unauthorized persons. By leaving the folder with classified documents unattended on his desk in an unsecure area, the [appellant] was derelict in his duty and failed to obey the regulations regarding safeguarding classified information.

It is clear from both the stipulation of fact and the colloquy with the military judge that the same underlying conduct was the basis for the offenses charged under these two specifications. Under these facts, the conduct at issue in Specification 7 (leaving classified information unsecured) is subsumed by the conduct charged in Specification 1 (failing to properly store classified material). We therefore set aside and dismiss Specification 7 of Charge I.[11]

Similarly, Specifications 4[12] and 11[13] of Charge I allege the same conduct, specifically that the appellant showed classified information to unauthorized persons. As the facts were developed on the record, the specifications involved the disclosure of the same classified information, during the same timeframe, at the same location, to the same unauthorized persons. In other words, these were not two separate instances of unauthorized disclosure. We find no discernible difference between the two other than one is charged under Article 92(1), UCMJ, as a violation of Department of Defense Regulation 5200.1-R, dated 14 January 1997, while the other is charged under Article 92(3), UCMJ, for willful dereliction. Accordingly, we set aside and dismiss Specification 11 of Charge I.

Although we do not find unreasonable multiplication of charges as applied to findings with respect to the remaining specifications, some of them nonetheless give us

---

[11] We recognize that after *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010), it may be permissible to charge the same criminal conduct under violations of both Articles 92(1) and 92(3), UCMJ, 10 U.S.C. §§ 892(1), 892(3). We need not reach that issue here as we find, in this case, the charging scheme represents an unreasonable multiplication of charges.

[12] Specification 4 of Charge I asserted that the appellant did at or near Daly City, California, between or about 1 September 2009 and 30 September 2009, fail to obey a lawful general regulation, to wit: DoD 5200.1-R dated 14 January 1997, by failing to take proper precautions to ensure that unauthorized persons did not gain access to classified information, to wit: showing classified information to unauthorized persons.

[13] Specification 11 of Charge I asserted that the appellant, who knew of his duties, at or near Daly City, California, between or about 1 September 2009 and 30 September 2009, was derelict in the performance of those duties in that he willfully failed to refrain from disclosing classified information to those unauthorized to receive said classified information, as it was his duty to do.

pause.  Specifications 3, 5, and 6 of Charge I represent violations of Article 92(1), UCMJ, failure to obey the applicable Executive Order, for removing classified information from official premises without proper authorization.  Understandably, these removals are charged separately, because the appellant removed classified information from different locations during different timeframes.  However, the same removals that form the sole basis of Specifications 3, 5, and 6, are included again in Specifications 10, 12, and 13, as part of the alleged violations of Article 92(3), UCMJ.  While the dereliction specifications go on to allege other misconduct, and therefore need not be dismissed, we express concern over the decision to charge the offenses in this fashion unless the intent was to charge in the alternative.  If that was the case, that intent should have been made clear.

    2.  Unreasonable Multiplication of Charges for Sentencing

In addition to unreasonable multiplication of charges as applied to findings, we find unreasonable multiplication of charges as applied to sentencing such that we must also fashion a remedy that appropriately focuses on punishment.  *Quiroz*, 55 M.J. at 339.  Our findings with respect to the *Quiroz* analysis require us to determine the appropriate remedy to correct error of unreasonable increase in the appellant's punitive exposure.  We conclude it was inappropriate to set the maximum punishment in this case based on an aggregation of the maximum punishments for each separate offense.  As a result, the appellant faced a maximum period of confinement of 66 years and 3 months, but for the pretrial agreement.  Accordingly, we merge several of the specifications for purposes of sentencing.

The appellant was charged with willful dereliction of duty for the improper transport and storage of classified materials under Specifications 8 and 9 of Charge I.  The appellant was traveling to a new duty location based on a permanent change of station and took leave en route.  When he left his prior duty location, he took classified documents with him.  He then went on leave, in an overseas location, with the classified information in his possession, which conduct formed the basis of Specification 9.  After his period of leave, he continued to travel to his new duty station in the United States, still in possession of the same classified material.  This conduct formed the basis of dereliction of duty under Specification 8.  Under the circumstances presented here, we find that this was a continuing course of conduct, albeit in different countries, and although the specifications were properly charged separately for findings, they should be merged for sentencing.

Charged under each of the five specifications of Charge III, was the unauthorized possession, willful retention, and failure to deliver documents relating to the national defense to the officer or employee of the United States entitled to receive them, in violation of Title 18, United States Code, Section 793(e), and that said conduct was of a nature to bring discredit upon the armed forces.  Each specification charged the appellant

with committing the offense in a different location, during a different timeframe, over a continuous period of four years. Beginning in April 2008, the appellant possessed, retained, and failed to deliver the documents first at his duty station in the United States, then subsequently at a deployed location, an overseas duty location, an overseas leave location, and finally culminating at his last duty location in the United States where his unauthorized possession was discovered in April 2012. Given the various locations where the appellant committed the offenses, to include three different overseas locations and duty locations in two different states in the United States, we find no error with charging each separately. However, this again was a continuing course of conduct. Once he was in possession of the documents without proper authorization, he continued to possess, retain and fail to deliver them until his supervisor ultimately discovered the documents in his work space. Each specification under Charge III carried with it a maximum of 10 years of confinement. Thus these specifications constituted the bulk of the appellant's punitive exposure at least with respect to confinement. In that the factual bases for these specifications are more aptly viewed as a continuing course of conduct, and particularly where the associated punitive exposure is increased from 10 years to 50 by charging them separately, we find these specifications constitute an unreasonable multiplication of charges for sentencing. Accordingly, we merge them for sentencing purposes.

*Sentence Reassessment*

Having found the appellant's convictions for Specification 2, 7 and 11 of Charge I constituted an unreasonable multiplication of charges warranting dismissal, and having merged Specifications 8 and 9 of Charge I, as well as Specifications 1, 2, 3, 4, and 5 of Charge II for sentencing purposes, we must consider whether we can reassess the sentence or whether this case should be returned for a sentence rehearing. We are confident we can accurately reassess the appellant's sentence, despite the fact that the punitive exposure has been significantly decreased.

This court has "broad discretion" in deciding to reassess a sentence to cure error and in arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has observed that judges of the Courts of Criminal Appeals can modify sentences "'more expeditiously, more intelligently, and more fairly' than a new court-martial." *Id.* at 15 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). Based on the totality of circumstances in this case, we find we may reassess the sentence, thereby curing any error as a result of the unreasonable multiplication of charges in this case.

Pursuant to *Winckelmann*, four factors guide our analysis in determining we can confidently reassess the sentence in this matter:

(1) Dramatic changes in the penalty landscape and exposure:  As a result of our finding that three specifications must be dismissed as an unreasonable multiplication of charges, and the merger for sentencing purposes of Specifications 8 and 9 under Charge I, and Specifications 1 through 5 under Charge III, the maximum possible sentence to confinement is reduced to 23 years from the 66 years and 3 months the appellant faced at trial.  This is a significant change in the penalty landscape, although the maximum possible sentence to confinement under our findings remains 22 years above the sentence the military judge imposed.

(2)   Whether an appellant chose sentencing by members or a military judge alone:  The appellant was sentenced by a military judge alone.  Our certainty as to what would have been done absent the error is greater in this situation.

(3)   Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses:  This factor indicates we may confidently reassess the appellant's sentence.  The appellant still stands properly convicted of violating several lawful general orders and regulations, willful dereliction in the performance of his duties, larceny of military property, and unauthorized possession, retention and failure to deliver national defense documents to appropriate authorities.  His deliberate mishandling of classified information, to include the improper removal, retention, transport, storage, and unauthorized disclosure of the same is the gravamen of the appellant's misconduct.  Because the remaining specifications capture the underlying conduct of those dismissed, all of the evidence presented at trial remains relevant and admissible.  This factor strongly weighs in favor of our ability to reassess the appellant's sentence.

(4)    Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial:  This court collectively has ample experience with these types of charges

and cases with similar facts. Our experience informs us that we are able to reliably determine what sentence would have been imposed at trial.

Therefore, under the unique facts of this case and considering the totality of the circumstances, we find we are able to "determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Having so found, we reassess the appellant's sentence to the same sentence that was approved by the convening authority: a bad-conduct discharge, confinement for 10 months, forfeiture of all pay and allowances, and reduction to E-2. We are certain the military judge would have imposed no less than this sentence even had the maximum imposable sentence to confinement been 23 years at the time of trial.

*Conclusion*

The findings of guilty as to Specifications 2, 7, and 11 of Charge I are set aside and dismissed as unreasonable multiplication of charges. The remaining findings, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED.**

FOR THE COURT

STEVEN LUCAS
Clerk of the Court