# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 CARLOS A. GONZALES-GOMEZ**
**United States Army, Appellant**

ARMY 20121100

Headquarters, III Corps and Fort Hood
Patricia H. Lewis, Military Judge (arraignment)
Gregory A. Gross, Military Judge (trial)
Colonel Stuart W. Risch, Staff Judge Advocate (pretrial)
Colonel Ian Corey, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Major Aaron R. Inkenbrandt, JA; Captain Nicholas J. Larson, JA (on brief).

For Appellee: Colonel Mark A. Sydenham, JA; Major Daniel D. Derner, JA; Captain Christopher A. Clausen, JA (on brief).

30 November 2016

--------------------------------
OPINION OF THE COURT
--------------------------------

MULLIGAN, Senior Judge:

For the same act, the government charged appellant with forcible sodomy, abusive sexual contact, and wrongful sexual contact. After the panel returned a guilty verdict to all three specifications, *the government* moved that the sexual contact offenses be dismissed as being unreasonably multiplied. The military judge denied the motion. In his first assignment of error, appellant asks us to do what the trial judge did not. The government on appeal does not oppose appellant's requested relief.

In his second assignment of error, appellant asks this court to provide relief for the 641 days it took to complete the post-trial processing of his case. This delay, which is over five times what is presumptively reasonable, reflected the six months it took to *mail* appellant his copy of the record of trial and draft and sign the staff judge advocate recommendation (SJAR). The government agrees appellant is entitled to relief.

## BACKGROUND

A panel convicted appellant, contrary to his pleas, of one specification of willfully disobeying a noncommissioned officer, four specifications of false official statement, one specification of engaging in an indecent act, one specification of abusive sexual contact, one specification of wrongful sexual contact, and one specification of forcible sodomy in violation of Articles 91, 107, 120, and 125, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 891, 907, 920, 925 (2006 & Supp. IV 2011). The panel sentenced appellant to a dishonorable discharge and confinement for six years. The convening authority approved the adjudged sentence.

Appellant, a twenty year-old soldier on his first deployment to Afghanistan, befriended and formed a close relationship with the victim, Private (PV1) DHR. The two soldiers were apparently initially drawn together as non-native English speakers (appellant is from Mexico whereas PV1 DHR is from Peru). During the deployment they were virtually inseparable. The deployment caused PV1 DHR some psychological issues and his unit eventually redeployed him back to the rear detachment at Fort Hood. Appellant, distraught that his friend was gone, made three attempts at suicide by taking a combination of Motrin and Tylenol. After the third suicide attempt, appellant's command redeployed him back to Fort Hood and assigned him to the rear detachment.

The rear detachment back at Fort Hood had six soldiers, including appellant and the victim. The commander, determining that appellant and the victim were likely to get each other into trouble in the lightly-supervised rear detachment, directed a "No Contact" order that prohibited appellant and PV1 DHR from having contact with each other. The order was issued, poorly enforced, and had little effect on keeping the two soldiers apart or out of trouble. Appellant and the victim ate together, went to the gym together, spent nights together in each other's rooms, and traveled together on holidays to visit each other's families.

Appellant planned to go with PV1 DHR to New York City for New Year's Eve. When appellant submitted his pass request, he falsely told his first sergeant that he was going to Austin, Texas. Appellant had duty on New Year's Day and, to avoid detection of his absence, paid another soldier to cover his duty. When that soldier failed to appear for duty, the unit noticed appellant's absence and attempted to reach him. Appellant, who was in the New Jersey/New York metropolitan area, lied to a noncommissioned officer several times as he attempted to conceal his actual location. He first stated that he was in Austin but stranded without a ride. When the unit informed him they were sending a driver for him, he changed his story to state he was in California at his father's house. Appellant attempted to fly home on a stand-by basis to avoid detection but returned to his unit on his previously scheduled return flight on 2 January 2012.

2

While appellant was in the New York area, he and the victim attended a $200 all-inclusive food and drink New Year's Eve party. Appellant "did not drink a lot," while the victim drank to excess. When they returned to their lodging after a late night of partying and drinking, the victim laid down fully clothed and "passed out." While PV1 DHR was unconscious, appellant licked PVT DHR's anus and then inserted his penis into PV1 DHR's rectum. The victim was unaware at the time this sexual activity occurred.

Several months later, appellant was diagnosed with anal warts. Appellant then told the victim that "maybe he should get checked [for a sexually transmitted infection.]" The victim demanded to know why he should get checked. After learning about the anal sex over New Year's Eve, the victim drove appellant to the military police station and reported a sexual assault.

## LAW AND DISCUSSION

### A. *Unreasonable Multiplication of Charges*

After the panel announced findings, the government made a motion to dismiss the alleged abusive sexual contact and wrongful sexual contact, Specifications 2 and 3 of Charge III. The government argued the specifications were unreasonably multiplied with the finding of guilt for forcible sodomy, the Specification of Charge IV. Although not explicitly stated, the government charged the two sexual contact offenses as quasi-lesser-included offenses to the forcible sodomy.[1]

While denying the government's motion to dismiss the specifications, the military judge merged all three specifications for purposes of sentencing. The military judge stated his reason for merging and not dismissing the specifications was to preserve the convictions of the sexual contact offenses for appeal in the event the forcible sodomy offense was found to be insufficient. That is, had the military judge set aside the sexual contact offenses, he was concerned that if a future reviewing or appellate authority dismissed the forcible sodomy charge the accused would receive an appellate windfall. Given that this court conducts a de novo review for factual and legal sufficiency, such concerns are not unfounded.

Although the military judge may have avoided the possibility of an unjust appellate windfall, by not dismissing the specifications at trial, he created new problems. When appellant's trial ended, he stood convicted of three specifications of sexual misconduct for one act. There appears to be universal agreement that only a single specification was appropriate and legally correct.

---

[1] Strictly speaking, they are not lesser-included offenses, *see United States v. Jones*, 68 M.J. 465 (C.A.A.F 2010), hence why they needed to be separately charged.

Recently our sister court addressed this same conundrum and provided the following guidance to military judges:

> When a military judge is presented with findings that reflect an unreasonable multiplication of charges that cannot be adequately addressed by merging the charges for sentencing purposes, the military judge must then decide whether to consolidate or dismiss the affected specifications. This is a significant decision that should be carefully considered by the military judge. Specifically, consideration should be given to what happens if, on appeal, the remaining offense is set aside.

*United States v. Thomas*, 74 M.J. 563 (N-M. Ct. Crim. App. 2014). We agree. But we note several dangers in saving the issue for appeal.

First, military justice practitioners cannot assume uncorrected issues of unreasonable multiplication of charges will be corrected on appeal. Appellate review may be waived or withdrawn. *See* UCMJ art. 61. Depending on the approved sentence, this court may not have appellate jurisdiction over the court-martial. *See* UCMJ art. 66(b). Moreover, we do not presume the appellate process, robust as it may be in military appeals, will catch every error.

Second, even assuming we correct the issue on appeal, during the pendency of the appeal appellant stands convicted of more offenses than is just under the circumstances.

Third, by not ruling on the motion on its merits, the military judge deprived this court of his analysis of the substantive issue. While we conduct a de novo review of the record of trial under Article 66(c), UCMJ, it does not mean our review is not informed by the decisions and analysis of the trial court. A military judge presiding over the trial is often better positioned to address, for example, whether the specifications were charged in the alternative, represent government overreach, or adequately address appellant's crimes. *See United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

Lastly, as a matter of judicial economy, it is inefficient to intentionally save for appellate litigation issues that can be easily addressed at trial. One of the most common assignments of error at this court are claims of unreasonable multiplication of charges. What can easily be resolved at trial through a motion by parties intimately familiar with the record becomes, on appeal, the routine requirement to address these issues with the not insubstantial attention of appellate counsel and this court. To the extent that appellate resources are not infinite, this factor weighs in favor of saving for appeal only those issues where there is a matter in dispute.

4

The Navy Court in *Thomas* revived a possible solution:

> Dismissal of [the unreasonably multiplied] offense in favor of the remaining greater offense may be the appropriate remedy where the unreasonably multiplied offenses stand in a greater-lesser relationship. In other cases, consolidation may be the more appropriate remedy as "the findings of guilty as to [consolidated] specifications are not affected because they still apply to the portions of the specifications added to the remaining specification . . . ." *United States v. Sorrell,* 23 M.J. 122, 122 n.1 (C.M.A. 1986). Consolidation is accomplished by simply combining the operative language from each specification into a single specification that adequately reflects each conviction.
>
> When consolidation is impracticable, such as when the guilty findings involve violations of different UCMJ articles, military judges should consider a conditional dismissal of one or more findings. Conditional dismissals "become effective when direct review becomes final in the manner described in Article 71(c), UCMJ" and therefore "protect the interests of the Government in the event that the remaining charge is dismissed during [appellate] review." *United States v. Britton*, 47 M.J. 195, 203-05 (C.A.A.F. 1997) (Effron, J., concurring).

*Thomas*, 74 M.J. at 569.

We agree with the *Thomas* court's solution. The military judge's action in this case does not strike us as unusual. As a routine issue presented to the court, and because the possibility of repetitive harm is not slight, we determine that appropriate action for a trial judge when presented with a motion for unreasonable multiplication of charges that cannot be adequately addressed by merger may be to "conditionally dismiss" the suspect specifications. A conditional dismissal of a specification is a dismissal of a specification conditioned on the remaining specification(s) surviving final appellate review. *See* UCMJ art. 76 ("Finality of proceedings, findings and sentences"); UCMJ art. 71(c) (definition of final judgment as to legality of proceedings). Of course, nothing in this opinion should be construed as preventing a military judge from dismissing a specification outright when warranted. Whether a dismissal for unreasonable multiplication of charges should be conditional lies within the sound discretion of the trial judge.

A conditional dismissal ensures the promulgating order appropriately reflects appellant's crimes, preserves the government's interests on appeal, and serves the interests of judicial economy. A conditional dismissal also places an appellant on

notice of the consequences if, for example, the remaining specification does not survive appellate review (i.e. the condition is met).[2] Recently, for example, in *United States v. Parker,* 75 M.J. 603 (N-M. Ct. Crim. App. 2016), the court dismissed a rape conviction and revived a conditionally dismissed specification alleging a sexual assault.

The threshold issue discussed above involved the actions of the military judge. We find the three specifications at issue to be unreasonably multiplied. *See Quiroz*, 55 M.J. at 337. Accordingly, we dismiss two of them in our decretal paragraph.

*B. Dilatory Post-Trial Processing*

The convening authority took action on appellant's case 641 days after the panel sentenced appellant on 30 November 2012. The record of trial contains no explanation why the transcription of the 765-page, six volume record of trial required 406 days. It required an additional 180 days to place the authenticated record of trial in the mail to be served on appellant. The SJAR was not signed until 1 September 2014, 610 days after appellant's court-martial. The government concedes on appeal it has no reasonable explanation for the delay in either transcribing the record or in serving the authenticated record on appellant.[3]

Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of the unjustified dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."). *See generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

_____

[2] The military judge should clearly state whether a dismissal is conditional. Assuming the convening authority approves the findings as adjudged, the promulgating order should reflect that the dismissal as conditional.

[3] There are two key parts to post-trial processing. Part one is the production of a record of trial and the authentication by the military judge. Once the record is authenticated, the staff judge advocate owns and controls the second part of the process, which starts with service of the SJAR on the accused. The 410 days required to produce this record of trial does not in any way justify the additional 190 days to sign the SJAR. The only plausible explanation for this extraordinary delay is a total lack of rigor and accountability in the SJA's office.

The government concurs appellant is entitled to some relief. The unexplained delay between announcement of sentence and action is simply too long, and could "adversely affect the public's perception of the fairness and integrity of military justice system . . . ." *Ney*, 68 M.J. at 617. Thus, we find relief is appropriate under the facts of this case and we will accordingly reduce appellant's sentence by 180 days.

## CONCLUSION

The findings of guilty of Specification 2 and 3 of Charge III are set aside and DISMISSED. Upon consideration of the entire record, the remaining findings of guilty are AFFIRMED. Given the dilatory post-trial processing, however, we affirm only so much of the sentence as provides for a dishonorable discharge and confinement for sixty-six months. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside portions of the findings and sentence, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Judge FEBBO concurs.

Judge WOLFE concurring:

I join the majority opinion fully in all but one aspect. I would find that the unreasonable and *unexplained* delay in this case constituted a violation of the due process rights of appellant. Although adequately stated by the majority, the facts bear repeating.

It took 180 days after authentication to mail the case to appellant. An administrative task that should take at most a few hours instead took six months. It took 190 days after authentication to draft a two-page, routine legal memorandum.

These delays reflect a lack of leadership, not resources. It is carelessness so stark the United States does not even try to defend it. Given the egregiousness of the delay, and the lack of any effort to explain it, I would find this convening authority and his staff violated appellant's due process rights. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006).

More broadly, faced with numerous cases of excessive post-trial delay, I am concerned this court's routine granting of sentence reductions may be causing more harm than good. Specifically, by granting sentencing relief in such cases we engender a moral hazard where such relief is assumed and expected—thereby diminishing the impetus to get it right in the first instance. There is scant evidence that our routine reduction of justly-earned sentences serves to spur proper post-trial process or deter lethargic post-trial processing. The opposite may be the more likely—we may be greasing the wheels of apathy.

7

Additionally, this court often enforces deadlines, tests counsel's effectiveness at trial, and, when warranted, holds individuals accountable for the performance of their duties in the military justice system. *See United States v. Banks*, 75 M.J. 476 (Army Ct. Crim. App. 2016) (holding defense counsel to their statutory allowed time for post-trial). I see little reason not to do so here.[4] *See* Army Reg. 27-26, Legal Services: Rule for Professional Conduct for Lawyers, Appx. B, R.1.1 (Competence), R.1.3 (Diligence) (1 May 1992) ("A lawyer shall act with reasonable diligence and promptness in representing a client and in every case.").

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[4] As usual, the header of our opinion reflects the name of the SJA who issued the pretrial advice and the SJA who signed the recommendation. However, in cases such as this one where several SJAs came and went between referral and action, it omits the names of the SJAs who presided over *substantial* periods of the delay.