# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 CARLOS A. GONZALEZ-GOMEZ**
**United States Army, Appellant**

ARMY 20121100

Headquarters, III Corps and Fort Hood
Patricia H. Lewis, Military Judge (arraignment)
Gregory A. Gross, Military Judge (trial)
Colonel Stuart W. Risch, Staff Judge Advocate (pretrial)
Colonel Ian Corey, Staff Judge Advocate (post-trial)


For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Major Aaron R. Inkenbrandt, JA; Captain Nicholas J. Larson, JA (on brief); Lieutenant Colonel Tiffany M. Chapman, JA; Captain Cody D. Cheek, JA; Captain Matthew D. Bernstein, JA (on brief following remand).

For Appellee: Colonel Mark A. Sydenham, JA; Major Daniel D. Derner, JA; Captain Christopher A. Clausen, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Captain Austin L. Fenwick, JA; Captain Joshua B. Bannister, JA (on brief following remand).


1 March 2018

----------------------------------------------------
MEMORANDUM OPINION ON REMAND
----------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

The Court of Appeals for the Armed Forces (CAAF) remanded this case to us for a new review under Article 66(c) and to specifically address whether our reduction of appellant's sentence by 180 days provided appellant meaningful relief when we decided the case outside the timeframe established under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006) and announced our decision one day after

appellant was released from confinement. *United States v. Gonzalez-Gomez*, No. 17-0200/AR, 2017 CAAF LEXIS 1061 (C.A.A.F. 2 Nov. 2017).

## BACKGROUND

In our initial decision in this case, we set aside and dismissed specifications alleging abusive sexual contact and wrongful sexual contact (Specifications 2 and 3 of Charge III) as being unreasonably multiplied with a third specification alleging forcible sodomy, and affirmed the remaining findings of the case.[1] We also addressed the excessive time—641 days—between sentencing and action in the case. While we found no due process violation in that delay (that is, the sentence was correct in law and fact), we nonetheless exercised our Article 66(c) authority and approved a sentence reduction of six months, affirming only so much of appellant's sentence as provided for a dishonorable discharge and sixty-six months confinement. *United States v. Gonzales-Gomez,* 75 M.J. 965, 969 (Army Ct. Crim. App. 2016).

Appellant's six-year sentence was adjudged on 30 November 2012. When appellant was processed into the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas, the confinement facility calculated his Maximum Release ("MXRD") date as 29 November 2018, which corresponded to the length of appellant's adjudged sentence to confinement.[2] The facility calculated his Minimum Release Date (MRD)[3] as 4 December 2017. His parole eligibility date (PED), or the earliest he could be paroled, was calculated as 29 November 2014. *See* Dept. of Def. Instr. 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority [DoDI 1325.07], encl. 2, para. 18.a (11 Mar. 2013; incorporating

---

[1] We affirmed appellant's conviction for one specification of disobeying a superior commissioned officer, four specifications of false official statement, one specification of indecent act, and one specification of forcible sodomy, in violation of Articles 91, 107, 120 and 125, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 891, 907, 920, 925 (2006 & Supp. IV 2011).

[2] *See* Army Reg. 633-30, Apprehension and Confinement: Military Sentences to Confinement [AR 633-30], para. 2.*e.* (2 Dec. 2015).

[3] The MRD is the MXRD reduced by the actual number of number of days of abatement credited to the sentence. AR 633-30, para. 2.*f.* Upon entry, the MRD factors in good credit time (GCT), which for inmates whose offenses all occurred after 31 December 2004, is calculated at five days per month. *See* DoDI 1327.07, encl. 2, app. 3, at para. 2.b.(2).

Change 2, 22 Sep. 17) (a prisoner with a sentence to confinement of six years is eligible for release on parole after completing one-third of the term of confinement).

On 21 April 2015, appellant filed his first application requesting clemency and parole.[4] The MXRD date of 29 November 2018 remained the same. However, based on work abatement and other credits, his MRD was calculated as 10 October 2017. The Disposition Board and Commander at the USDB did not recommend approval of appellant's parole request. Among other observations, appellant would not accept responsibility for offenses, which made him ineligible for sex offender treatment. On 9 June 2015, the Army Clemency and Parole Board (ACPB) denied appellant's request for parole due to "the heinous nature of [appellant's] offense against a fellow [s]oldier and [appellant's] need for rehabilitative programing."

In early April, 2016, appellant again applied for parole. However, based on work abatement and other credits, his MRD was calculated as 11 August 2017. The parole review documents showed appellant still had not accepted responsibility for his offense and had not completed sex offender treatment. As part of appellant's clemency packet, Mandatory Supervised Release (MSR)[5] was recommended by the Local Disposition Board and Disciplinary Barracks Commander since he still needed to "participate in crime specific treatment." On 21 June 2016, the ACPB denied appellant's request for parole based on the seriousness of the offenses. However, they directed appellant's release on MSR at appellant's MRD (11 August 2017).

On 25 July 2016, appellant filed a request for reconsideration for parole. On 8 September 2016, the Deputy Assistant Secretary of the Army-Review Boards (DASA RB) reversed the ACPB's 21 June 2016 parole denial. Appellant was granted parole and released from the United States Disciplinary Barracks on 29 November 2016. Documents submitted on the record at CAAF, which are now part of the appellate record, show the period of parole runs from the date of release, 29

---

[4] Parole consideration by the Army Clemency and Parole Board is not automatic; in addition to serving the required time for consideration, the inmate must request parole. DoDI 1325.07, encl. 2, para. 18.a.

[5] MSR is a form of supervised release that occurs when an inmate reaches his MRD. Unlike parole, which the prisoner requests, MSR, if imposed, is directed by the ACPB. *See* DoDI 1325.07, encl. 2, para. 16.a.4, d.

November 2016, until the end of appellant's initial six-year sentence to confinement, or 29 November 2018.[6]

Until the court received the above parole and clemency records after the CAAF remand, the court was not aware of appellant's parole status or reasons for his release date.[7] We issued our initial decision on 30 November 2016, the day after appellant's release on parole. This decision was issued 782 days after appellant's case was docketed with this court. Appellant filed his brief with the court 188 days after docketing. The government filed its brief 208 days later. The court took 386 days to render its opinion after briefs were filed.

## DISCUSSION

Having again completed a review of this case pursuant to Article 66, UCMJ, we adopt the reasoning and holding in our initial opinion as to the findings. *Id*. We also, again, find the sentence as approved by the convening authority to be correct in law and fact and no due process violation stemming from the post-trial delays associated with the processing of his case. Although the sentence is correct in law and fact, we again find that the approved sentence to confinement should be reduced by six months.

Having completed our review, we turn to the question specified by the CAAF: did this court provide appellant meaningful relief in reducing appellant's sentence to confinement by six months?

*Was the relief granted meaningful?*

To start our analysis we first look to the practical effect our six-month reduction in confinement had on appellant on the date we rendered our initial opinion. Appellant's maximum release date would change from 30 November 2018 to 30 May 2018. That would be the date he was no longer subject to incarceration or the conditions of parole.

Even though appellant was released on parole the day prior to our initial decision in his case, his release was conditional. Appellant's period of supervised

---

[6] We did not have these documents during our first review. Documents concerning an appellant's post-trial confinement and parole status are not normally part of the record we review.

[7] Through appellant's defense counsel, the court was aware that appellant was released from confinement on 29 November 2017.

release currently extends through 29 November 2018. As documents submitted to CAAF show, during his parole, appellant is subject to numerous restrictions on his liberty.[8] Among these restrictions, appellant must: remain within the limits prescribed by [his] probation officer; agree to be subject to electronic and location monitoring with a curfew; agree to submit his person, property, residence, computer, and telephone to a warrantless search at any time by law enforcement or his probation officer under certain circumstances; conduct himself in an honorable manner and not associate with persons of bad or questionable reputation; agree to undergo evaluation by a credentialed provider committed to the mental health case of sex offenders and enroll in and participate in any program acceptable to his parole officer; not consume alcohol or drugs, and not view or possess sexually explicit materials.

If appellant violates his conditions of parole, he is subject to parole revocation and reincarceration. *See* DoDI 1325.07, encl. 2, para. 22. Appellant's period of supervised release terminates when he completes his full sentence.[9] Our six-month sentence reduction will reduce the period that appellant is subject to supervised release by an identical amount. Given the onerous restrictions on appellant's liberty, we find our sentence reduction does provide appellant meaningful relief.[10]

*Does the sentence remain appropriate?*

Nonetheless, although our initial decision provided appellant with meaningful relief, we must reconsider the appropriateness of appellant's sentence in light of the CAAF's remand to determine:

IN LIGHT OF THE FACT THAT THE COURT OF CRIMINAL APPEALS ISSUED ITS INITIAL OPINION OUTSIDE OF THE TIMEFRAME ESTABLISHED IN *UNITED STATES v. MORENO*, 63

---

[8] Some of the terms of supervised release were redacted and not subject to our review.

[9] Appellant, by accepting parole, waived any good time credit or other abatements against his period of confinement earned while incarcerated. DoDI 1325.07, encl. 2, para. 18.j.

[10] To ensure that appellant's period of mandatory supervised release is amended once this decision is no longer inchoate to reflect the six-month sentence reduction the Clerk of Court is directed to forward a copy of this opinion to the Army Clemency and Parole Board.

M.J. 129 (C.A.A.F. 2006), AND ONE DAY AFTER APPELLANT
WAS RELEASED FROM CONFINEMENT ON PAROLE, DID THE
180-DAY REDUCTION IN THE ADJUDGED SENTENCE OF
CONFINEMENT AFFORD APPELLANT MEANINGFUL RELIEF
FOR THE DILATORY POST-TRIAL PROCESSING?

Based on the new information provided to us for the first time on remand, it appears that the timing of the court's earlier opinion and six-month reduction of confinement did not affect appellant's eligibility for parole consideration and the ultimate decision to grant appellant parole. Appellant submitted his parole request to the ACPB in early April, 2016, over eleven months before we rendered our initial decision in this case. At that time, appellant's MRD was 11 August 2017. Even if we had issued our initial opinion earlier and granted appellant a six-month sentence reduction, his MRD would still would have been in February 2017, after the ACPB's decision to deny parole and place him on MSR, and after the DASA RB granted appellant's parole appeal on 8 September 2016 that resulted in his parole on 29 November 2016.

Appellant's sentence, to include a dishonorable discharge, was appropriate for the offenses for which he was found guilty. However, in light of this court issuing its initial opinion outside of the timeframe established under *Moreno* and the public perception of the timing of this court's initial opinion granting him a six-month sentence reduction a day before his release from confinement, we find additional relief is appropriate under the unique facts of this case.

We will, in addition to the six-month reduction in appellant's sentence to confinement, only approve a bad-conduct discharge.[11] The public likely is not aware of the nuances of the parole and clemency process. Although the delay at this court was not egregious, the relief we provided appellant could have appeared illusory given the timing of our original decision. This relief will also address any speculation that an earlier opinion may have impacted the parole board's recommendation and DASA RB's decision on appellant's parole or arguments that appellant was prejudiced by the timing of this court's opinion.

---

[11] Appellant's offenses occurred before amendments to Article 56, UCMJ, that mandate a dishonorable discharge upon a finding of guilty of forcible sodomy under Article 125, UCMJ, and certain offenses under Article 120, UCMJ.

**CONCLUSION**

We again set aside and dismiss Specifications 2 and 3 of Charge III and affirm the remaining findings of guilty. Based upon the overall post-trial processing of this case, we only approve so much of the sentence as extends to a bad-conduct discharge and confinement for sixty-six months. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside portions of the findings and sentence, are restored. *See* UCMJ art. 75(a).

FEBBO, Judge concurring;

The record on appeal now includes information regarding appellant's Clemency and Parole Board records, disciplinary barracks counseling and treatment records, work evaluation reports, education reports, and overall history while confined. The government, for example, now cites to the record evidence of appellant's treatment records. I know now that appellant was denied parole twice, in part, because he was unwilling to accept responsibility for the offenses and was therefore ineligible for sex offense treatment. Based on these new documents, I also know that appellant received an Article 15, UCMJ in March 2012 for disorderly conduct and reduced to the grade of E-1. This Article 15 was not presented as evidence at appellant's trial or argued in sentencing.

I believe we should normally limit our review to the sentence "as approved by the convening authority" based on the "complete record" as required by Article 66(c), UCMJ. I briefly touched upon appellant's disciplinary records to highlight why they are best kept outside our Article 66(c), UCMJ, review. However, I understand why our superior court mandated we review the specified issue given the unusual appellate posture of this case.

WOLFE, Judge, dissenting in part;

In our initial opinion I found that the egregious and unexplained delay in the case amounted to a violation of appellant's due process rights. *See United States v. Gomez-Gonzales*, 75 M.J. 965, 970-71 (Army Ct. Crim. App. 2016) (Wolfe, J., concurring). Our superior court has stated that a due process violation can occur when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." This is such a case. *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As I again find a violation of appellant's Due Process rights, I do not need to address the specified issue of whether the relief we provided was meaningful.



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court