# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39347**

————————————

**UNITED STATES**
*Appellee*

**v.**

**William R. SHERROD**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 20 September 2018

————————————

*Military Judge:* Patricia A. Gruen.

*Approved sentence:* Dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 31 May 2017 by GCM convened at Kadena Air Base, Japan.

*For Appellant:* Captain Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

LEWIS, Judge:

In accordance with his pleas, Appellant was found guilty at a general court-martial of stealing mail on divers occasions in violation of Article 134, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 934. Contrary to his pleas, Appellant was found guilty of one specification of rape by unlawful force in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] Officer members sentenced Appellant to a dishonorable discharge, six years confinement, total forfeitures of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority deferred the reduction in grade, automatic forfeitures, and adjudged forfeitures until action. At action, the convening authority approved the adjudged sentence.[2]

Appellant raises three issues for our consideration on appeal: (1) whether his rape conviction is legally and factually sufficient; (2) whether the military judge abused her discretion by failing to give an instruction on what constitutes unlawful force; and (3) whether Appellant's sentence is inappropriately severe.[3] We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Appellant and his spouse, ES, married in 2010 when she was 17 years old.[4] In January 2014, Appellant and ES moved to their second assignment at Kadena Air Base (AB), Japan. Appellant began working as a Postal Clerk at the Kadena Post Office. By November 2015, the couple's fourth child was born.

During the assignment at Kadena AB, Appellant began trying to convince his spouse to experiment with anal sex. He started by putting his penis around her anal area while they were in bed together. On more than one occasion, ES told him that she did not want it to go any further. On a couple of occasions prior to 9 August 2016, Appellant pushed his penis in a little bit, causing ES pain. She would "scream" and "startle" Appellant, who would then say he was sorry and leave her alone.

---

[1] Appellant pleaded guilty to the lesser included offense of sexual assault by causing bodily harm, but the officer members found him guilty of the greater offense of rape. The members found Appellant not guilty of four specifications of sexual assault, three of which were alleged on divers occasions, in violation of Article 120, UCMJ. All Article 120 allegations involved Appellant's spouse, ES.

[2] Appellant reached his expiration of his term of service (ETS) prior to convening authority action, which terminated all of his pay and allowances.

[3] Appellant personally submitted supplemental matters on the first issue and personally asserted the third issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We considered all matters submitted on legal and factual sufficiency as a single assignment of error.

[4] ES's father provided written permission for the marriage due to her age.

On Tuesday, 9 August 2016, when Appellant came home from work, ES was exhausted from her day. As they were going to bed that night, she told Appellant that she did not want to have sex and that she needed to sleep. When she awoke, it was still dark and she was on her stomach. ES wondered what was going on as she does not sleep on her stomach. Appellant was behind her and on top of her back. ES said "no, no." Appellant stopped what he was doing and said he was sorry. ES began falling back asleep and then realized Appellant was holding her arms at the triceps/biceps area. Appellant penetrated her anus with his penis. ES tried to move her arms, "yelled" that it hurt, and that she wanted Appellant to stop. ES hit her pillow and the headboard and Appellant still did not stop. Eventually, Appellant "held it in for a minute," and then his penis "came out" and he "let [ES] go." Appellant told ES he was sorry and that he did not know why he did not stop. ES retreated to the bathroom crying and then dressed and left the house in the middle of the night.

On 20 September 2016, ES made an unrestricted report of sexual assault which began an investigation by the Air Force Office of Special Investigations (AFOSI). That same day, Appellant waived his rights under Article 31, UCMJ, 10 U.S.C. § 831, and in a recorded AFOSI interview, admitted that he had anal sex with his spouse during August 2016 without her consent. Appellant described being in the heat of the moment, the anal penetration as lasting "maybe two or three seconds," that his spouse said "ow, ow, stop," that he was "already frozen in a state of shock," and "could not move." Appellant denied being "even in the motion of sex." Appellant described what he did as "unwanted sodomy" and twice as "rape." He denied holding his spouse's hands down, but stated "I can completely understand why she would feel like she was being held there because I couldn't move myself." Later in the interview, Appellant stated, "I was on top of her, so when I froze inadvertently, yes, I was holding her down, but it was not my intention to forcibly control her or hold her in that position."

In November 2016, Appellant noticed envelopes in the Kadena Main Post Office from the Army and Air Force Exchange Service (AAFES) that could not be delivered because the addressees had moved. The envelopes had the statement "Your Reward is Here" printed on them and Appellant could feel something inside each of them about the size of a gift card. On two occasions, Appellant took a stack of envelopes, opened them, and removed the $20.00 AAFES gift card he found inside. He used a total of 25 gift cards to buy an iPad mini tablet for $489.00 from AAFES.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Additional Background

Appellant asserts that the evidence is legally and factually insufficient to support the findings of guilt to rape because the Government failed to establish beyond a reasonable doubt that Appellant used unlawful force when he penetrated his spouse's anus. Much as he did at trial, Appellant asserts on appeal that he is only guilty of sexual assault by causing bodily harm.

#### 2. Law

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Importantly, "[t]he term reasonable doubt . . . does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "In applying this test, 'we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution.'" *Id.* (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)) (additional citation omitted).

Our assessment of factual sufficiency is limited to the evidence produced at trial. *Id.* (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A 1993)). We "cannot find as fact any allegations of which the accused was found not guilty at trial." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017). "The test for a factual sufficiency review . . . is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, *the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt.*'" *Rosario*, 76 M.J. at 117 (quoting *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)); *see also Turner*, 25 M.J. at 325.

"In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). Just as with legal sufficiency, "[t]he term reasonable

doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *Lips*, 22 M.J. at 684).

### 3. Analysis

As the military judge instructed the court members, Appellant's conviction for rape required the Government to prove the following elements beyond a reasonable doubt: (1) on or about 9 August 2016, at or near Kadena AB, Japan, Appellant committed a sexual act upon ES by penetrating her anus with his penis; and (2) Appellant did so by using unlawful force against ES. *See* 10 U.S.C. § 920(a); *Military Judges' Benchbook,* Dept. of the Army Pamphlet 27–9 at 563 (10 Sep. 2014). "'[U]nlawful force' means an act of force done without legal justification or excuse." 10 U.S.C. § 920(g)(6); *Benchbook*, at 564. "Force" means the use of a weapon; the use of physical strength or violence as is sufficient to overcome, restrain, or injure a person; or inflicting physical harm sufficient to coerce or compel submission by the alleged victim. 10 U.S.C. § 920(g)(5); *Benchbook* at 564.

ES provided testimony establishing each of the required elements. She testified that Appellant penetrated her anally while holding her by the biceps/triceps area. She tried to move her arms and could not move them. She did not feel like she could move her body. She yelled that it hurt, and that she wanted Appellant to stop. She hit her pillow and the headboard to no effect. Eventually, Appellant let her go.

Appellant offers three reasons why his rape conviction is legally and factually insufficient: (1) there was no medical, physical, or scientific evidence presented at trial; (2) ES's testimony was biased and laden with heavy emotion resulting from a failing marriage; and (3) ES's testimony contradicts Appellant's account of how he sexually assaulted ES on 9 August 2016. We will address these points in turn.

On the first point, the absence of medical, physical, or scientific evidence does not alone necessitate a finding of legal and factual insufficiency. In this case, ES testified that she wanted to go to the doctor, but knew they would ask questions and she did not want to affect Appellant's career or have it be her "fault because [she] said something." Further, we considered the absence of medical, physical, or scientific evidence in the context of the time that passed between the 9 August 2016 incident and the date of the unrestricted report on 20 September 2016. Appellant's first point, when taken in the context of all the evidence in the record of trial, does not necessitate a finding of legal and factual insufficiency.

On Appellant's second point that ES's testimony was laden with heavy emotion and biased due to a failing marriage, it is undisputed that ES displayed heavy emotion immediately after the 9 August 2016 incident and during her

trial testimony. Additionally, trial defense counsel did elicit some testimony from ES on their general marital troubles and her suspicions that Appellant may have been having an affair. However, the evidence in the record overwhelmingly supports the conclusion that the reason for the failing marriage was Appellant's actions on 9 August 2016.

To this end, the prosecution called ST, a friend who ES talked to approximately one week after the incident on 9 August 2016. ST, a fellow military spouse and mother of young children, was a women's leader in Appellant and ES's church. ST met with ES at the request of the pastor of their congregation. At that meeting, ES told ST that Appellant had forced himself on her. ST testified the meeting "immediately turn[ed] very emotional and very sad," and further that ES's demeanor was "awful" with "tons of phlegm and tears and crying," and "several moments of just silence where [ES] couldn't breathe." ST did not testify to any concerns expressed by ES over the possibility of Appellant engaging in an extramarital affair. ST made only passing references to other marital troubles between ES and Appellant during her testimony.

Having considered the evidence presented as a whole, including Appellant's recorded interview with the AFOSI, and having made allowances for not having personally observed the witnesses at trial, we are convinced that ES testified credibly and reliably as to the rape charge. The evidence of ES's bias, while admissible at trial and considered fully by this court on appeal, does not necessitate a finding of legal and factual insufficiency.

On Appellant's final point, there are indeed instances where the testimony of ES conflicts with statements by Appellant made during his recorded interview with the AFOSI. However, there are a number of consistencies, including the charged timeframe, location of the incident, the fact that ES wanted to go to sleep, that anal penetration occurred without ES's consent, the description of the physical positions of ES and Appellant, that ES was actually held down in some manner by Appellant, and that ES, visibly upset, left the bed for the bathroom after Appellant released her. Appellant's assertions to the AFOSI that he did not hold ES down by the *hands* above her head do not directly conflict with ES's testimony that she was held down by her *arms* at the biceps/triceps area. Similarly, Appellant's later assertions that he only "inadvertently" held down ES does not change the fact that he actually used physical strength sufficient to restrain ES while penetrating her anally without her consent.

Appellant points to a sister-service court decision to persuade us that his rape conviction should be set aside. In *United States v. Thomas*, the Navy-Marine Corps Court of Criminal Appeals found the Government's evidence of unlawful force deficient during a factual sufficiency review and set aside the rape conviction. 74 M.J. 563, 567 (N.M. Ct. Crim. App. 2014). The victim in *Thomas*

was "intoxicated and asleep" and had little memory of the incident; thus, the Government had no evidence of unlawful force. The court found that "simply being on top of the other person during a sexual act, without anything more, is not enough" to prove unlawful force beyond a reasonable doubt. *Thomas,* 74 M.J. at 567.

The only similarity between Appellant's case and *Thomas* is the physical position of the offenders and victims involved. Unlike the victim in *Thomas*, ES testified vividly about the events of 9 August 2016 with full recall of the event. ES was awake, struggled, and yelled without having any impact on Appellant. ES described the pain she felt as worse than the four natural child births she had experienced. During her testimony, ES explained she "felt even more out of control and more pain because [she] was on [her] stomach, because he was holding [her] arms." ES's unsuccessful physical and verbal struggle with Appellant until the time that he let her go are easily distinguishable from "simply being on top." There is sufficient evidence for the court members and for this court to conclude that Appellant raped ES by using physical strength sufficient to restrain her.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence is legally sufficient to support Appellant's conviction for rape of ES beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt of rape beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction is therefore both legally and factually sufficient.

## B. Defense Requested Instruction

### 1. Additional Background.

The military judge gave the following instruction to the members with respect to the definitions for the offense of rape:

> "Unlawful force" means an act of force done without legal justification or excuse.
>
> . . . "Force" means the use of a weapon; the use of physical strength or violence as is sufficient to overcome, restrain, or injure a person; or inflicting physical harm sufficient to coerce or compel submission by the alleged victim.

The military judge declined to provide the following defense-requested instruction:

> Simply being on top of the other person during a sexual act without anything more is not enough to prove beyond a reasonable

doubt the use of such physical strength or violence as is sufficient to overcome, restrain, or injure. In other words, body weight that is merely incident to the charged sex act, in this case, penetration of [ES's] anus with the accused's penis is not enough to prove beyond a reasonable doubt the use of such physical strength or violence as is sufficient to restrain or injure. Lastly, the charged sexual act, in this case the penetration of [ES's] anus with the accused's penis is not itself unlawful force.

Trial counsel objected to the defense-requested instruction as an "overstatement" that would "confuse the members." Trial counsel argued that "body weight" can still be used to produce unlawful force. The military judge declined to reach a conclusion on "whether or not body weight is enough" under the "totality of the circumstances in this case." She denied the defense-requested instruction finding the standard instructions that defined the terms force and unlawful force "sufficient."

### 2. Law

Whether a military judge appropriately instructed a court-martial panel is a question of law we review de novo. *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (citing *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F 2011)). "The military judge has an independent duty to determine and deliver appropriate instructions." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Westmoreland*, 31 M.J. 160, 163–64 (C.M.A. 1990)). While trial defense counsel may request specific instructions from the military judge, the judge has substantial discretionary power in deciding on the instruction to give. R.C.M. 920(c), Discussion; *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citing *United States v. Smith*, 34 M.J. 200 (C.M.A. 1992)). Denial of a defense-requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 346 (C.A.A.F. 2007) (citing *Damatta-Olivera*, 37 M.J. at 478; *United States v. Rasnick*, 58 M.J. 9, 10 (C.A.A.F. 2003)). We apply a three-prong test to evaluate whether the failure to give a requested instruction is error: the instruction must be (1) "correct;" (2) "not substantially covered in the main [instruction];" and (3) cover "such a vital point in the case that the failure to give it deprived [Appellant] of a defense or seriously impaired its effective presentation." *Carruthers*, 64 M.J. at 346 (first alteration in original) (citing *United States v. Gibson,* 58 M.J. 1, 7 (C.A.A.F. 2003)).

### 3. Discussion

The first sentence of trial defense counsel's requested instruction is adapted from the Navy-Marine Corps Court of Criminal Appeals decision in *Thomas*, as discussed above. *Thomas*, 74 M.J. at 567. That decision is, of

course, non-binding on this court and involved a different allegation of instructional error by the military judge during trial.[5]

We need not decide whether each of the three sentences requested by trial defense counsel are correct statements of law. Instead, we resolve this assignment of error on the second and third prongs of the test. On the second prong, we find, as the military judge did, the main instructions defining force and unlawful force substantially covered the issues in the proposed defense instruction. The critical issue in this case is whether Appellant used physical strength sufficient to overcome, restrain, or injure ES. The instructions given to the court members were clear, concise, and substantially covered the required concepts. On the third prong, the failure to give the instruction did not deprive Appellant of a defense or seriously impair its effective presentation. Appellant challenged the prosecution's evidence that ES was restrained on multiple fronts. While defense counsel's arguments were ultimately unsuccessful, the factual defenses were fully litigated at trial and the decision to not provide the requested instruction was not an abuse of discretion by the military judge.

## C. Sentence Appropriateness

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

When arguing sentence disparity and asking us to compare his sentence with the sentences of others, Appellant bears the burden of demonstrating those other cases are "closely related" to his, and if so, that the sentences are "highly disparate." *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Cases are "closely related" when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme,

---

[5] The military judge in *Thomas* did not instruct the members on the statutory definition of force under 10 U.S.C. § 920(g)(5) and instead only gave the statutory definition of unlawful force under 10 U.S.C. § 920(g)(6).

or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If an appellant carries that burden, then the Government must show a rational basis for the sentence differences. *Id.*

Additionally, during our Article 66(c), UCMJ, review of sentence appropriateness, we may, but are not required to, consider cases that are not "closely related" to Appellant's. *See United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001); *Lacy*, 50 M.J. at 288.

### 2. Analysis

Appellant asserts his sentence is inappropriately severe. He provides citations to six cases and argues they all are "similar" to his case.[6] Some of the cases cited by Appellant include sexual assault convictions and others include larceny or stealing mail convictions. Appellant invites this court to add up the confinement adjudged in the six cases, which he calculates as four years and seven months, and compare it to the six years confinement he received. Further, Appellant invites us to add up the dollar amount of the thefts in the cited cases, which he calculates as $24,000.00, and compare that to the $500.00 in gift cards he stole from the mail.

As a threshold matter, Appellant fails to demonstrate how the six cases mentioned in his brief are "closely related" to his case. Appellant was neither a co-actor involved in a common crime, involved with other servicemembers in a common or parallel scheme, nor does there exist a "direct nexus" between Appellant and any other servicemember whose sentence Appellant is inviting us to compare to his own.

While we realize we may still consider the cases cited by Appellant, even if they are not closely related to his, we decline to do so in this case. "The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Ballard*, 20

---

[6] *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012); *United States v. Annis*, No. ACM 38001 (rem), 2015 CCA LEXIS 379 (A.F. Ct. Crim. App. 3 Sep. 2015) (unpub. op.); *United States v. Loniak*, No. 20150835, 2017 CCA LEXIS 563 (A. Ct. Crim. App. 18 Aug. 2017) (unpub. op.), *rev denied*, 77 M.J. 194 (C.A.A.F. 2018) (mem.); *United States v. Chinchilla*, No. 20150266, 2017 CCA LEXIS 561 (A. Ct. Crim. App. 18 Aug. 2017 (unpub. op.), *rev denied*, 77 M.J. 119 (C.A.A.F. 2017) (mem.); *United States v. Wiredu*, No. 201600243, 2017 CCA LEXIS 555 (N.M. Ct. Crim. App. 17 Aug. 2017) (unpub. op); *United States v. Tyler*, NMCCA 201200327, 2013 CCA LEXIS 232 (N.M. Ct. Crim. App. 21 Mar. 2013) (unpub. op.), *set aside and remanded by* 73 M.J. 56 (C.A.A.F. 2013), *modified and aff'd, United States v. Tyler*, 2014 CCA LEXIS 882 (N.M. Ct. Crim. App. 11 Dec. 2014) (unpub. op.).

M.J. 282, 283 (C.M.A. 1985)). We find no reason to deviate in this case from the general rule set out in *LeBlanc*.

Based on the offenses of which he was convicted, Appellant faced the possibility of confinement for life without eligibility for parole. The court members, having reviewed all the evidence, determined a sentence including six years of confinement, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand was appropriate. The dishonorable discharge was a mandatory minimum punishment. Appellant's offenses are serious and his sentence to six years confinement was well below the maximum confinement he could have received.

As for the particular circumstances of Appellant's case, he was convicted of raping his spouse on or about 9 August 2016. Within three months of this offense, he stole mail from the Kadena Post Office addressed to 21 different people. Appellant emphasizes the mitigating evidence presented during his sentencing hearing, the counseling he received after 9 August 2016, his positive feelings towards his spouse, that he was kept from contact with his children, his mental difficulties resulting in his suicide watch status in confinement, and the financial impacts he has faced. However, these circumstances do not render the imposed sentence inappropriately severe, and this court has no authority to engage in clemency. *Nerad*, 69 M.J. at 146. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude that the sentence is not inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.[7]


FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] We note an error in the promulgating order with respect to the Specification of the Additional Charge, which should be entitled "Specification" vice "Specification 1." We direct the publication of a corrected court-martial order to remedy the error. Additionally, the personal data sheet (PDS) attached to the staff judge advocate's recommendation (SJAR) is dated 27 March 2017; however, the PDS admitted at trial is dated 31 May 2017. While the PDS admitted at trial reflects an updated length of service and one additional device on an award, we find no colorable showing of possible prejudice due to the errors in the PDS attached to the SJAR. *See United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (citation omitted).